IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANDREW MALTAIS JR., individually and as the Parent and Next Friend of M.M., a minor child, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) CIV. ACT. NO. 1:23-cv-326-TFM-C<br>) |
| BULLSEYE BOW, LLC and NEIL KAHRS, | )<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND FINAL ORDER**

Pending before the Court is Plaintiff's Notice of Proposed Settlement (Doc. 27, filed 2/23/24). Following the notice of settlement, the Court appointed a guardian ad litem for the minor, and held a *pro ami* settlement hearing on May 22, 2024. For the reasons set forth below, the Court finds that the proposed settlement is fair, reasonable, and just, and is in the best interest of M.M., a minor child, and therefore is approved.

The Plaintiff in this action is Andrew Maltais, Jr., individually and as the Parent and Next Friend of M.M., a minor child. Mr. Maltais is represented by Cunningham Bounds, LLC, by and through his counsel of record, Robert L. Mitchell, Esq. and Tyler J. Flowers, Esq. The Defendants are Bullseye Bow, LLC ("Bullseye") and Neils Kahr. Bullseye and Mr. Kahr are represented by Christian & Small LLP, by and through their counsel of record, F. Todd Weston, Esq. The parties have reached a proposed settlement of all claims in exchange for the payment of $1,000,000.00 to Plaintiff, along with other good and valuable consideration. The amount of $1,000,000.00 has been represented to be the total amount of all insurance coverage available to the Defendants. The injured party, M.M., is a minor child who brought his claims through his father and natural

guardian, Andrew Maltais, Jr.  Thus, court approval of the proposed settlement is required.

Under Alabama law, minor children are "wards of the court" and therefore entitled to the court's protection.  *Stone v. Gulf Am. Fire and Cas. Co.*, 554 So. 2d 346, 361 (Ala. 1989).  Further, courts have the power and duty to determine whether any settlement of a minor's claim is in the minor's best interest.  *Large v. Hayes*, 534 So.2d 1101, 1105 (Ala. 1988); *Abernathy v. Colbert County Hospital Bd.*, 388 So.2d 1207, 1208-09 (Ala. 1980); *Tennessee Coal, Iron & Railroad Co. v. Hayes*, 12 So. 98, 103 (1892).

On February 29, 2024, the Court appointed Gregory E. Vaughan, Esq., as the guardian ad litem for the above-referenced minor child.  Doc. 28.  In accordance with the Court's order, the Guardian Ad Litem submitted a sealed report to the Court regarding his assessment of the matter on behalf of M.M.  *See* Doc. 38.

A *pro ami* settlement hearing was duly conducted on May 22, 2024.  At the hearing, the Court heard evidence of Plaintiff's factual and legal allegations, Defendant's defenses thereto, and the minor child's injuries.  The Court also had the benefit of the recommendation of the guardian ad litem who, upon acceptance of his appointment by this Court, (a) met with the minor child and his parents; (b) met with Plaintiff's legal counsel; (c) studied all liability and damages issues so as to fully inform himself whether the terms and conditions of the proposed settlement are, in fact, in the minor children's best interests; and (d) conferred with Forge Consulting, a Registered Investment Advisor retained by the Maltais family to establish investment vehicles in which to protect M.M.'s settlement proceeds until he reaches the age of majority.

The Court also heard from the Guardian Ad Litem about the relative merits and risks of this lawsuit and received evidence from Plaintiff's counsel about the costs of litigation expenses and attorneys' fees.  Further, the Court had the opportunity to question Defendants' counsel

concerning the settlement. Finally, the Court had the opportunity to observe the minor child in the courtroom and to hear from his parents, who requested the Court approve the settlement as proposed.

## I.  BACKGROUND, CLAIMS, AND DEFENSES

According to the Plaintiff's Complaint, Defendant Bullseye Bow, LLC ("Bullseye") and Neils Kahr sold a Bullseye Youth Bow Trainer Set to the parents of M.M. at the Fairhope Arts & Crafts Festival in Fairhope, Alabama.

While M.M. and his brother were playing with the bow and arrow sets, the foam tip became separated from the shaft of the arrow when the bow was drawn to its full extension, as a result of the foam tip being unsecured to the shaft of the arrow. The separation of the foam tip led to the propulsion of a sharp, blunt arrow end, which impaled M.M's right eye and caused traumatic injuries. M.M. was transported by emergency medical helicopter to Sacred Heart Hospital, and subsequently transported by ambulance to UAB Callahan Eye Hospital. M.M. was diagnosed with lacerations to his eye, a ruptured globe, traumatic hyphema, choroidal hemorrhage, loss of his eye lens, and detachment of his retina. M.M. has undergone additional follow-up care, including surgical intervention.

Since the incident, M.M. has received health insurance benefits provided by and through numerous health care providers and health care insurers. These health care providers and health care insurers asserted subrogation claims totaling over $95,000.00. Plaintiff's counsel negotiated a reduction of the subrogation interests such that the total amount necessary to satisfy the various subrogation interests is $61,531.35. *See* Doc. 45-1.

Plaintiff's allegations, which Defendants expressly deny, are set forth in Plaintiff's June 27, 2023, Complaint that was filed in the Circuit Court of Baldwin County, Alabama, and

subsequently removed to federal court by the Defendants. Doc. 1. Plaintiff asserts claims of (i) general product liability under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), (ii) failure to warn, (iii) negligence, and (iv) wantonness). *Id.* M.M. incurred medical expenses as a result of his injuries. In addition, he has sustained some degree of a permanent injury to his eye and may potentially require future care and treatment. In addition to his physical injuries, M.M. has also sustained some measure of mental and emotional anguish. The injuries have also negatively affected his ability to engage in some activities that he previously enjoyed.

Defendants deny all of Plaintiff's material allegations, plead the general issue, and assert numerous affirmative defenses including contributory negligence and invocation of numerous statutory caps on recoverable damages. Defendants' denials of Plaintiff's allegations and their affirmative defenses are set forth in their Answers. *See* Docs. 7, 8. According to the defense, they are supported by expert testimony. However, these experts were not yet disclosed at the time a resolution was reached and the Court can make no independent evaluation as to the merits of the testimony. Further, the Court often finds a battle of the experts on these types of personal injury cases. Therefore, the Court places no weight on the defense assertion on expert testimony.

## II.   EVIDENCE BEFORE THE COURT

The following evidence was made available to the guardian ad litem for review, and was presented to this Court either at the *pro ami* settlement hearing, or following the hearing at the Court's request:

A.   Various medical bills from M.M.'s treatment following the incident;

B.   Documents from Forge Consulting related to the Legacy Enhancement Trust, including a letter, information sheet, portfolio, agreement, list of allowable and restricted purchases, fiduciary safeguards, certificate of insurance, and other insurance-related

documents; and

C.  The Guardian Ad Litem Report.

Additionally, the Court heard from Plaintiff's counsel, Defense counsel, and the Guardian Ad Litem as to why the agreement should be approved. The Court also had the opportunity to observe M.M. and his family in the Courtroom, and M.M.'s parents requested that the Court approve the settlement. Finally, the Court heard testimony from Thomas Johnson of Forge Consulting, who explained how the Legacy Enhancement Trust and Structured Settlement Annuity operate and how payments would be made to M.M.

### III.  TERMS AND CONDITIONS OF PROPOSED SETTLEMENT

Following continued settlement dialogue between counsel for the respective parties, Plaintiff agreed to accept in full and final settlement of all claims with all Defendants the sum of $1.0 Million ($1,000,000.00) – which has been represented to be the total of all insurance coverage available to the Defendants.

In addition, as a material provision of the settlement, Bullseye has now implemented a new safety feature regarding the arrow insert and foam tip on the Youth Bow Trainer Set. Specifically, this new safety feature permanently adheres the plastic insert with the foam tip to the arrow itself. As a result, the insert of the foam tip and the arrow rod will be permanently fixed together.

### IV.  PROPOSED DISPOSITION OF SETTLEMENT PROCEEDS

The proposed disposition of the settlement funds is as follows:

| | |
|---|---|
| **GROSS RECOVERY:** | $   1,000,000.00 |
| **LESS:** | |
| **Attorneys' Fees:** | $      400,000.00 |
| **Expenses:** | $        14,013.86 |
| **Subrogation Owed:** | $        61,531.35 |

| | |
|---|---|
| **Reimbursement to Parents:** | **$          2,123.36** |
| **NET RECOVERY FOR M.M.** | **$      522,331.43** |

M.M.'s net recovery will be allocated as follows: $322,332.43 will fund the Legacy Enhancement Minor's Pooled Trust, and the remaining $200,000.00 will fund a Structured Settlement Annuity. *See* Doc. 45-6.

## V.   APPLICABLE LAW & ANALYSIS

### A.   Settlement Terms

This Court has the authority, and indeed the duty, to conduct a *pro ami* hearing to ascertain whether the parties' proposed settlement is in the minor child's best interests.

> The next friend cannot release the cause of action, nor compromise it, nor submit it to an arbitration the result of which will bind the [minor]. And being without power to compromise the cause of action, and the court having the power and being charged with the duty of controlling the suit to the protection of the [minor's] interest, an attempted compromise cannot have force and validity injected into it by his mere consent to a judgment for the amount he has assumed to agree to receive in settlement of the cause of action. His mere consent is nugatory. It is as if it were not and had never been. The court may, upon being advised of the facts, upon hearing the evidence, enter up a valid and binding judgment for the amount so attempted to be agreed upon, but this not because of the agreement at all – that should exert no influence – but because it appears from the evidence that the amount is just and fair, and a judgment therefore will be conservative of the [minor's] interests.

*Abernathy v. Colbert County Hospital Bd.*, 388 So.2d 1207, 1208-09 (Ala. 1980) (quoting *Tennessee Coal, Iron & Railroad Co.*, 12 So. at 103 (1892)). "Before [a *pro ami*] settlement can be approved, there must be a hearing, with an extensive examination of the facts, to determine whether the settlement is in the best interest of the [minor]." *Large*, 534 So.2d at 1105. Where a court, after hearing the facts, determines that a proposed settlement is in the protected person's best interests and enters judgment approving the settlement, the settlement is binding and enforceable

and bars future claims for the same injury. *Id.*; *Maryland Casualty Co. v. Tiffin*, 537 So.2d 469, 471 (Ala. 1988).

Further, this Court's order approving the proposed settlement must include a factual description of the incapacitated person's claims and the facts of the case, the terms of the proposed settlement, and a finding that the settlement is in the protected person's best interests. The order should enter judgment for the protected person in the amount of the settlement. *See Large*, 534 So.2d at 1104-05; *Chambers County Comm'rs v. Walker*, 459 So.2d 861, 866 (Ala. 1984).

**B.     Attorneys' Fees and Expenses**

An order approving the requested attorneys' fee must articulate reasons supporting the finding that the fee is reasonable which "allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how [the court] calculated the attorney fee." *Madison Dept. of Human Resources v. T.S.*, 53 So.3d 38, 54-59 (Ala. 2009); *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 553 (Ala. 2004). The order should also include an award of the *guardian ad litem's* fee. *See Englund v. First Nat'l Bank*, 381 So.2d 8, 12 (Ala. 1980).

With respect to the requested attorneys' fee, this Court has authority to consider and approve the reasonableness of the agreed-upon contingency fee agreement between Andrew Maltais, Jr. (on behalf of the minor child) and Plaintiff's counsel. *Ex parte Peck*, 572 So.2d 427, 428 (Ala. 1990). The Alabama Supreme Court has set forth twelve criteria a court might consider when determining the reasonableness of an attorney fee:

1. [t]he nature and value of the subject matter of the employment;
2. The learning, skill, and labor requisite to its proper discharge;
3. The time consumed;
4. The professional experience and reputation of the attorney;
5. The weight of his responsibilities;
6. The measure of success achieved;

      7. The reasonable expenses incurred;
      8. Whether a fee is fixed or contingent;
      9. The nature and length of a professional relationship;
     10. The fee customarily charged in the locality for similar legal services;
     11. The likelihood that a particular employment may preclude other employment; and;
     12. The time limitations imposed by the client or by the circumstances.

*Madison County Dept. of Human Resources*, 53 So.3d at 44 (quoting *Van Schaack v. AmSouth Bank, N.A.*, 530 So.2d 740, 749 (Ala. 1988)). "These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met." *Id.* (citing *Beal Bank v. Schilleci*, 896 So.2d 395, 403 (Ala. 2004)). "Although all the foregoing factors must be considered, not necessarily all need be applicable." *Id.* at 48 (citing *Van Schaack v. AmSouth Bank, N.A.*, 530 So.2d at 749). "Nor are the foregoing twelve factors exclusive. Other pertinent criteria may also be considered." *Id.* at 44 (citing *Pharmacia Corp.*, 915 So.2d at 553).

Andrew Maltais, Jr. employed the law firm of Cunningham Bounds, LLC, to represent his minor child in connection with the incident that made the basis for this action. Plaintiff's Employment Agreements with Cunningham Bounds, LLC, provides that (1) Cunningham Bounds, LLC, will be paid a fee equal to 40% of the amount collected in the case; and (2) Plaintiffs will pay the reasonable expenses advanced in pursuing this litigation to its conclusion.

Cunningham Bounds, LLC, has, to date, incurred $14,013.86 in expenses while pursuing this case on behalf of the Plaintiff. Plaintiff requests the Court approve the 40% contingency fee agreement they entered with Cunningham Bounds, LLC, upon consideration of the following factors:

**(1) The Nature and Value of the Subject Matter of the Employment**

The Court understands from the pleadings, evidence, and representations of counsel for

the parties that there is a substantial dispute as to liability. It is apparent that this action was strenuously opposed by the named Defendants; that pursuit of this action was a difficult and complex undertaking for Plaintiff's counsel, that each party's counsel vigorously represented their respective client's best interests; that proof of liability and damages required a thorough understanding of pertinent design, engineering, and medical issues; that proof of liability and damages also required retention and in-depth consultations with numerous expert witnesses; and that Plaintiff's counsel studied, assimilated, and organized reams of highly complex material in an attempt to condense and present such information in a way which would be understandable and persuasive to jurors.

It is also apparent that Defendants advanced serious defenses that were evidently going to be supported by expert opinions, which the jury could readily have accepted, so Plaintiff's counsel were also obliged to anticipate those defenses and prepare persuasive strategies for trial that would overcome them; and that the favorable settlement is a reflection of the level of experience, expertise, dedication and effort required to bring about such a result.

**(2) The Learning, Skill, and Labor Requisite to Proper Discharge of this Employment and (4) The Professional Experience and Reputation of the Attorneys**

The law firm of Cunningham Bounds, LLC, and its attorneys involved in this case, Robert L. Mitchell, Esq., Aaron N. Maples (former member of Cunningham Bounds, LLC), and Tyler J. Flowers, Esq. possess, collectively, 25-plus years of experience in successfully handling both consumer product liability cases and industrial product liability cases. Counsel's learning, skill, experience, and efforts are evident in the result obtained in this and other litigation in Mobile County and elsewhere. Even a cursory review of jury verdicts obtained by the Plaintiff's law firm reveals the expertise and ability of Plaintiff's counsel.

Plaintiff's counsel has earned an excellent reputation with regard to successful handling of

serious injury cases and other high-stakes litigation in Mobile County and elsewhere. Plaintiff's counsel's experience in handling product liability cases is as good as any firm in the State of Alabama.

### (3) The time consumed in the litigation of this case and (12) The Time Limitations Imposed by the Client or the Circumstances

Plaintiff's counsel had to manage this complex case and the discrete issues it presented. Extensive pretrial discovery, including interrogatories, requests for production, requests for admissions, and informal investigative efforts were required. Consultations involved counsel, numerous fact witnesses, medical providers, therapists, expert witnesses, trial preparation personnel, family members, and others. Travel time was required while consulting with many of these people. Time was also spent preparing potential motion practice.

Behind the scenes, Plaintiff's counsel's staff (paralegals, legal assistants, bookkeepers, clerks, and runners) spent significant time preparing and filing pleadings, discovery requests, responding to Defendants' discovery requests, corresponding with insurers, health insurance subrogation specialists, trial graphics artists, software/computer-assisted trial preparation experts and technicians, and scheduling visits with physicians, expert witnesses, and opposing counsel when noticing depositions and court hearings and mediation.

Plaintiff's counsel offered an estimate of the amount of time spent by Robert L. Mitchell, Esq., Aaron N. Maples, Esq., and Tyler J. Flowers, Esq. during this litigation as totaling well over 125 hours. Additionally, time spent on this case by Cunningham Bounds' support personnel – including paralegals, secretaries, investigators, office assistants, and others – was represented to likely exceed 100 hours.

### (5) The Weight of the Plaintiff's Counsel's Responsibilities

There is substantial risk in any product liability action that is brought under Alabama law

and subject to a contingency fee arrangement. Plaintiff's counsel undertook the representation knowing they would have to meet the applicable burden of proof and likely disprove or at least discredit numerous assertions by the Defendants.

The weight of responsibility is also immeasurably greater when the injured party is a minor child.

**(9) The Nature and Length of the Professional Relationship**

This litigation lasted roughly 18 months from start to finish. It involved multiple attorneys, multiple paralegals, and numerous support personnel, including investigators, transcriptionists, graphic designers, medical illustrators, and other personnel.

**(6) The Measure of Success Achieved**

The results obtained through counsel's efforts under the unique circumstances of this case are as good as could be expected under the circumstances. Although no amount of money could ever truly compensate M.M. for his injuries, the amount obtained here will allow the minor to have an improved quality of life despite his injuries and will provide some measure of protection in the future for potentially required medical care and/or any impairments that may arise.

The proposed settlement is deemed fair and reasonable by the guardian ad litem appointed by the Court, as well as by the child's parents. Under these circumstances, this Court finds and concludes that the measure of success achieved is fair, reasonable, and commendable.

**(11) The Likelihood That a Particular Employment May Preclude Other Employment**

The Court makes no finding as to this factor, as no evidence was presented pertaining to it. The Court notes that it need not find in favor of all factors, but rather it must balance all of the factors as a whole.

**(8) Whether the Fee Is Fixed or Contingent and (10) Customarily Charged in the Locality for Similar Legal Services**

The minor child's natural guardian entered into contingency fee agreements with Plaintiff's counsel whereby he expressly authorized Cunningham Bounds, LLC, to incur the substantial risks of proceeding with this litigation. Counsel then incurred roughly 18 months of contentious litigation.

It has long been the customary practice for Plaintiff firms to charge contingent fees ranging from 35% to 50% depending on various factors – including the type of case, the complexity of the case, and the risk involved in handling the case. In the context of product liability claims, a 40% contingency fee falls within the range of what is reasonable, standard, and customary in the State of Alabama.

**(7) The Reasonable Expenses Incurred**

The expenses incurred by Plaintiff's counsel to-date total $14,013.86. Doc. 45-4. This case was contested from the outset. Hundreds of pages of medical records and other documents were produced in discovery, and carefully reviewed for evidentiary values, catalogued, indexed, and added to the parties' respective trial presentation programs. The parties consulted with numerous expert witnesses in preparation for disclosure in conformance with Fed. R. Civ. P. 26. Various pleadings and motions were filed.

Given what was needed to investigate the case, prove liability, overcome Defendants' defenses, retain expert witnesses, compile the exhibits and demonstrative aids needed, and bring the matter to a favorable conclusion, the expenses are all deemed reasonable and necessary.

**Summary**

All in all, the representation required significant learning, skill, and labor for its proper discharge; the Plaintiff's attorneys assigned to the case have, collectively, over 25 years of

experience practicing law and have a very good reputation; the Plaintiff's attorneys achieved a successful result, i.e., a favorable settlement considering the injuries and the significant dispute as to liability; the Plaintiff's attorneys incurred significant expenses in prosecuting the action; the Plaintiff's attorneys handled the case on a contingency fee basis, which carries significant risk; and the attorneys devoted time to this case that could have been profitably spent on other matters. This evidence supports the reasonableness of the attorney's fee of $400,000.00 and expenses in the amount of $14,013.86.

**C.     Guardian Ad Litem Fees**

The Court finds that the Guardian *ad litem*'s fee of $3,412.50 is reasonable under the factors set forth in *Peebles*, 439 So.2d 137, and has been duly earned by the Guardian *ad litem*. The Guardian *ad litem* represented the minor child's interest for personal injuries sustained as a result of the underlying incident; the representation required significant learning, skill and labor for its proper discharge; the Guardian *ad litem* spent 10.5 hours on the case; the Guardian has over 20 years of experience practicing law and has an excellent reputation; the result for the Plaintiff is a favorable settlement considering the injuries and the significant dispute as to liability; the Guardian did not incur any expenses in this case; a Guardian *ad litem* fee of $325.00 per hour is customary for such cases in this county; and the Guardian devoted time to this case that could have been profitably spent on other matters. This evidence supports the reasonableness of the Guardian *ad litem* fee.

The Court notes that the Guardian *ad litem*'s fee is not being withheld from the settlement funds, but rather is a cost to be separately covered by the Defendants.

**VI.     CONCLUSION**

The Rules of Civil Procedure permit a plaintiff to voluntarily dismiss an action without an

order of the court "by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment" or "a stipulation signed by all parties who have appeared." FED. R. CIV. P. 41(a)(1)(A). A request to dismiss an action requires a court order and dismissal by terms the court considers "proper" if Fed. R. Civ. P. 41(a)(1) does not apply. FED. R. CIV. P. 41(a)(2). A settlement involving a minor requires approval under Rule 41(a)(2).

Here, after review of the abovementioned facts of this case, Plaintiff's claims, Defendants' defenses, the terms of the proposed settlement, the report from the Guardian Ad Litem, all of the testimony and evidence presented at the *pro ami* settlement hearing, and from the overall record, the Court finds that the settlement is fair, reasonable, and just, and is in the best interest of M.M., a minor child.

It is accordingly **ORDERED** as follows:

(1)   The settlement proposed by the parties is **APPROVED**.

(2)   The Plaintiff's attorneys are entitled to attorneys' fees in the amount of $400,000.00 and reimbursement of costs in the amount of $14,013.86, which shall be satisfied out of the said judgment awarded the Plaintiff. The Court finds that the attorney's fee is reasonable under the factors set forth in *Peebles*, and has been duly earned by Plaintiff's counsel.

(3)   All medical subrogation claims and other medical care-related liens shall be negotiated and satisfied out of the judgment awarded to the Plaintiff. The Plaintiff is to satisfy the subrogation claims and any and all other medical and/or care-related liens, by and through their next friend.

(4)   Payment in the amount of $2,123.36 shall be distributed directly to Andrew J. Maltais, Jr., the parent and natural guardian of the minor child, as reimbursement

of expenses incurred in the treatment and care of M.M. following the incident made the basis of this action.

(5) The settlement funds shall be allocated and distributed as follows:

| | |
|---|---|
| **Gross Recovery:** | **$   1,000,000.00** |
| **Attorney's Fees:** | **$      400,000.00** |
| **Expenses:** | **$        14,013.86** |
| **Subrogation Owed:** | **$        61,531.35** |
| **Reimbursement to Parent:** | **$          2,123.36** |
| **Net Recovery to M.M.:** | **$      522,331.43** |

(6) A Guardian *ad litem* Fee of $3,412.50 is hereby awarded and taxed as a cost againstthe Defendants.

(7) Upon payment of the judgment by or on behalf of the Defendants, the Defendants and its insurance carrier and third-party administrator shall have discharged their obligations under the settlement and shall be discharged and released from any further liability to the Plaintiff arising out of the incident made the basis of this lawsuit, and all claims that were or possibly could have been asserted in this action by the Plaintiff against the Defendants are hereby merged into this judgment and forever barred.

(8) For the benefit of the minor child and to facilitate the allocation of his net settlement funds, a Minors Pooled Trust ("the Trust") is to be established and funded with $322,331.43 of the minor child's net settlement funds. *See* Doc. 45-6.

(9) Legacy Enhancement Trust ("Trustee") is hereby appointed to serve as Trustee of the Trust pursuant to the terms of the Trust.

(10) In addition to the Trust, a Structured Settlement Annuity ("SSA") will be funded with $200,000 of the minor child's net settlement funds. The SSA will provide

guaranteed payments to M.M. of $1,000.00 each month for 7 years beginning when M.M. turns 18. In addition, the SSA will make annual payments to the Trust in the amount of $33,000.00 for 4 years beginning when M.M. turns 18. The SSA will make a lump sum payment to the Trust of $214,455.00 when M.M. turns 25. The Trust will remain in place until M.M. reaches the age of 25 in order to receive the final guaranteed payment, at which point M.M. will have full access to the corpus of the Trust. The specific mechanics of the SSA are set out in detail in a document previously submitted to the Court. *See* Doc. 45-7.

(11) Pursuant to this Order, the Trustee shall accept the above-referenced portion of the net settlement funds allocated to M.M, and shall hold and administer such funds in accordance with the terms of the Trust.

(12) The Court retains jurisdiction to effectuate any portion of this settlement.

In accordance with the Notice of Proposed Settlement (Doc. 27), the oral motion to approve settlement at the pro ami hearing on May 22, 2024, the Release of All Claims (Doc. 46), the supporting documentation in the record, and this order approving settlement, it is **ORDERED** that this case is **DISMISSED with prejudice**.

The Clerk of the Court is **DIRECTED** to close this case.

**DONE** and **ORDERED** this the 25th day of June 2024.

       s/Terry F. Moorer  
       TERRY F. MOORER  
       UNITED STATES DISTRICT JUDGE